# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROXANN NAYLOR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-16-539-KEW |

## OPINION AND ORDER

Plaintiff Roxann Naylor (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 51 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a cashier, maid, and deli worker. Claimant alleges an inability to work beginning April 12, 2012 due to limitations resulting from chronic obstructive pulmonary disease ("COPD").

**Procedural History**

On April 25, 2013, Claimant protectively filed for disability

3

insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On May 12, 2015, an administrative hearing was held before Administrative Law Judge ("ALJ") B. D. Crutchfield by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. By decision dated June 16, 2015, the ALJ denied Claimant's request for benefits. The Appeals Council denied review on October 17, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to properly consider the opinion of Claimant's treating source.

### Consideration of the Opinion Evidence

In her decision, the ALJ found Claimant suffered from the severe impairment of COPD by history. (Tr. 14). The ALJ

4

determined Claimant retained the RFC to perform light work except she could lift, carry, push, or pull 20 pounds occasionally and ten pounds frequently; stand and/or walk with normal breaks for a total of about six hours in an eight hour workday; and sit with normal breaks for a total of about six hours in an eight hour workday. Claimant could occasionally climb. She should avoid concentrated exposure to extreme cold, heat, wetness, and humidity. Claimant should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 17).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of inspector/hand packager, mail sorter, and bench assembler, all of which were found by the ALJ to exist in sufficient numbers in both the national and regional economies. (Tr. 21). As a result, the ALJ determined Claimant was not disabled from April 12, 2012 through the date of the decision. Id.

Claimant contends the ALJ failed to properly evaluate the opinion of Melinda Scantling, Advanced Registered Nurse Practitioner ("ARNP"). Ms. Scantling attended Claimant beginning in August of 2008. On April 6, 2010, Claimant was seen by Ms. Scantling with complaints of chest pains and difficulty breathing. Ms. Scantling concluded on examination that Claimant's "chest

5

symmetrical, with a normal respiratory, the lung fields are POSITIVE WITH CONGESTION. No rales, or wheezing." (Tr. 315)(capitalization in original). On May 18, 2010, Claimant appeared for Ms. Scantling with complaints of itchy throat and eyes and medications follow up. Claimant's respiratory examination revealed "chest symmetrical, with a normal respiratory, the lung fields are POSITIVE WITH CONGESTION bilaterally. No rales, or wheezing." (Tr. 320). On June 21, 2010, Claimant reported frequent urination. Ms. Scantling determined her "chest symmetrical, with a normal respiratory, the lung fields are clear bilaterally. No rales, or wheezing." (Tr. 324). Similar respiratory reports were made on visits for August 2, 2010, August 4, 2010, and September 13, 2010. (Tr. 328, 331, 336). On October 1, 2010, Claimant reported sinus and chest congestion, cough, sore throat, and pain in the right ear. Ms. Scantling found Claimant's lung fields were positive with congestion bilateral with no rales or wheezing. (Tr. 340).

On January 17, 2013, Claimant was seen by Ms. Scantling with complaints of anxiety, stress, and pain and swelling of the right shoulder. Specifically with regard to Claimant's respiratory system, Ms. Scantling found her "chest symmetrical, with a normal respiratory, the lung fields are clear bilaterally. No rales, or

6

wheezing." (Tr. 303). On January 24, 2013, Ms. Scantling found Claimant's "chest symmetrical, with a normal respiratory, the lung fields are clear bilaterally. No rales, POSITIVE wheezing." (Tr. 306)(capitalization in original). On January 30, 2013, Claimant was again examined by Ms. Scantling who found Claimant's "chest symmetrical, with a normal respiratory, the lung fields are clear bilaterally. No rales, or wheezing." (Tr. 309). On March 28, 2013, Ms. Scantling found "chest symmetrical, with a normal respiratory, the lung fields are clear bilaterally. No rales, POSITIVE wheezing." (Tr. 312).

On May 16, 2013, Claimant was found by Ms. Scantling to have normal respiratory, clear lung fields bilaterally with no rales or wheezing. (Tr. 384). On August 12, 2013, Ms. Scantling reported Claimant's lung fields were positive with congestion bilaterally with no rales or wheezing. (Tr. 387). On October 10, 2013, Claimant's respiratory examination was normal with clear lung fields bilaterally and no rales or wheezing. (Tr. 391).

Ms. Scantling also filled out forms concerning the extent of Claimant's physical functioning. On January 3, 2014, Ms. Scantling completed a form requesting information on Claimant's gait in terms of speed, safety, and stability. Ms. Scantling stated Claimant's gait was "Fine, Stable without Instability." She also stated

7

Claimant was not required to use an assistive device. Claimant was also found to be able to effectively oppose thumb to fingertips, manipulate small objects, and grasp tools such as a hammer. (Tr. 381).

Ms. Scantling also completed a Pulmonary Residual Functional Capacity Questionnaire on Claimant dated April 24, 2015. She diagnosed Claimant with back pain, anxiety, asthma, and COPD. She identified the clinical, laboratory and pulmonary function testing that showed shortness of breath, tremors, audible wheezes, and oxygen saturation of 84-89%, and chest x-ray testing. On Claimant's asthma attacks, Ms. Scantling characterized the severity of the attacks as a nine on a scale from one to ten. She stated Claimant suffered from asthma attacks two to three times per week which incapacitated her for "days." She did not identify Claimant as a malingerer. (Tr. 446-47).

Ms. Scantling stated Claimant's anxiety contributed to the severity of her symptoms and functional limitations, stating she was "scared – can't breathe." She also stated Claimant's conditions were sufficiently severe to interfere with her attention and concentration needed to perform even simple work tasks "constantly." Claimant was found by Ms. Scantling to be incapable of tolerating even "low stress" jobs. (Tr. 447).

8

Ms. Scantling found Claimant's medications caused edema, dizziness, tremors, shortness of breath, increased anxiety, and decreased ability to concentrate. Her symptoms were considered to last the rest of her life. Id.

As a result of her impairments, Ms. Scantling estimated Claimant could not walk any city blocks without rest or severe pain. She also found Claimant could sit at one time for ten minutes and stand at one time for 15 minutes. In total in an eight hour workday, Ms. Scantling opined Claimant could sit and stand/walk a total of less than thirty minutes. She would also require unscheduled breaks every fifteen minutes lasting thirty minutes of sitting quietly. Claimant could rarely lift less than ten pounds and could never twist, crouch/squat, climb ladders, or climb stairs and rarely stoop. (Tr. 448).

Ms. Scantling also required Claimant to avoid all exposure to extreme cold and heat, high humidity, wetness, cigarette smoke, perfumes, soldering fluxes, solvents and cleaners, fumes, odors, and gases, dust, chemicals and other unspecified irritants. Claimant would have more bad days than good days and would also experience additional limitations due to her acute anxiety and bifocals. The earliest date that these limitations occurred was August 5, 2008. (Tr. 449).

Claimant was also evaluated through consultative examinations. On July 16, 2013, Dr. Theresa Horton perform an mental evaluation on Claimant. Dr. Horton noted Claimant's eye contact, speech, attitude and level of cooperation were appropriate. She walked into the appointment without assistance, with no unusual gait, and appeared to sit comfortably. She did not present with excessive motor movement including involuntary movements. She appeared genuine, calm, euthymic, in no distress, socially comfortable, and socially appropriate. Although Claimant complained of concentration problems, Dr. Horton believed her concentration appeared within normal limits. Claimant's thought processes were logical, organized, and goal directed. She had appropriate judgment and fair insight. (Tr. 360). Dr. Horton concluded Claimant appeared "capable of understanding, remembering, and managing simple and complex instructions and tasks with adequate social/emotional adjustment into occupational and social settings." (Tr. 361).

On August 9, 2013, Claimant was examined by consultant Dr. Wojcieche L. Dulowski. Dr. Dulowski noted Claimant was still a heavy smoker. An examination of Claimant's chest showed it was symmetrical with good respiratory effort and her lungs demonstrated vesicular breath sounds. Claimant showed good coordination, equal

strength in the upper and lower extremities, no tremor, and no pathological reflexes. Claimant's deep tendon reflexes were symmetrical in the upper and lower extremities and sensations were intact. (Tr. 363). Claimant was found to walk normally with good safety and stability. She did not use an assistive device and could walk on tiptoes and heels. Alignment of the cervical, thoracic, and lumbar spines were normal. Passive movements were completely normal in the upper and lower extremities. (Tr. 364).

On October 8, 2013, Dr. Adel Malati evaluated Claimant. Claimant's chest was found to move equally and regularly with respiration but her lungs showed decreased breaths bilaterally. Dr. Malati found no peripheral edema, cynanosis, or clubbing. No neurosensory deficits were found in any extremity. Claimant was seen walking in and out of the office without assistive device with a "nice, normal steady gait." She was able to sit, stand and lie down without difficulty. Claimant had full range of motion in the neck, shoulders, elbows, wrists, and hands. She had good hand grip strength of 5/5 and equal bilaterally. She also demonstrated full range of motion in the back, hips, knees, and ankles. She was able to do heel walking and toe walking without difficulty. (Tr. 373).

Pulmonary functional testing revealed moderate obstructive functioning. (Tr. 374-77, 398-403).

11

The reviewing consultative medical professionals, Dr. Tom Dees and Dr. Shelly Venters-Jacobs, concluded that Claimant's physical restrictions warranted limiting her to light work. (Tr. 79-81, 93-95).

The ALJ recognized these medical records in her decision. She found that nurse practitioners, such as Ms. Scantling, are not acceptable medical sources but rather is characterized under the regulations as an "other source". This conclusion is consistent with the applicable regulations. *See* 20 C.F.R. §§ 404.1502, 404.1513(a). "Other source" information, however, is useful for other purposes. "Information from [ ] 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Soc. Sec. R. 06–03p.

The ALJ concluded that Ms. Scantling's opinion contained in the Pulmonary Residual Functional Capacity Questionnaire was entitled to "no weight." She found the opinion's "extreme limitations given are not supported by the medical evidence of record." (Tr. 19). As noted herein, Ms. Scantling's own treatment

records do not support the level of limitation she urges in her RFC opinion. Most of the records indicated largely normal functioning. Moreover, the consultative examiners, while not treating sources, did examine Claimant and reached vastly different functional findings. Certainly, Claimant's pulmonary function testing revealed some obstructive defect. However, nothing in the objective medical record indicates limitations in Claimant's ability to engage in basic work activity below the light exertional level.

Claimant urges repeatedly in the briefing that the ALJ did not adequate consider Ms. Scantling's opinion as a "treating source." Claimant ignores the classification of the nurse practitioner's opinion as an "other source" and the limitations which accompanies that characterization, regardless of her having examined and treated Claimant. Accordingly, this Court finds support for the ALJ's conclusions in evaluating Ms. Scantling's opinion and his RFC conclusions.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security

Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 27th day of February, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE